## STATE v. LEE H. DEMRY.

### 109 N. W. (2d) 587.

### May 19, 1961—No. 38,118.

Lee H. Demry, pro se, for appellant.

Walter F. Mondale, Attorney General, George M. Scott, County Attorney, and Thomas M. Bambery, Assistant County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

Defendant was convicted of the crime of attempted forgery in the second degree. This is an appeal from a judgment of conviction. It is defendant's contention that the evidence is insufficient to support the jury's verdict and that in the trial proceedings he was denied certain constitutional or substantial rights.

Based upon the testimony of the state's witnesses viewed in the light most favorable to the verdict; and upon the documentary evidence submitted, the facts are as follows: On April 6, 1959, defendant tendered to the cashier at Sears Roebuck & Company, 900 East Lake Street, Minneapolis, a check drawn on the Northwestern National Bank of Minneapolis signed "William Naneville." He had gone to the cashier pursuant to directions he received from two clerks at Sears

from whom he had purchased merchandise and to whom he had tendered the check in payment of such merchandise.

In checking her credit files, the cashier found a warning notice with reference to checks presented and signed "William Naneville." She asked defendant for identification and defendant handed her a card issued by Anaconda Copper Mining Company to William G. Naneville. Pursuant to instructions, the cashier then rang an alarm bell to which a security officer at Sears responded. The cashier handed him the sales slips, the check, the warning notice, and the identification card furnished by defendant. The security officer requested defendant to accompany him to his office where he asked for additional identification. Defendant then submitted a Minnesota driver's license and an additional identification card issued to William G. Naneville. Defendant was asked his true name and stated that it was Lee Demry and that his address was 1041 James Avenue North. The security agent then recovered from him a checkbook on Northwestern National Bank of Minneapolis with the name "Robert Flenoid, Jr." printed thereon. Minneapolis police officers who were in the building were then called in and defendant was taken into custody. Both the security officer and the police officers testified that at the time of his arrest defendant admitted that he had written the check presented to the cashier.

At the trial evidence was submitted that on March 30, 1959, defendant had cashed a forged check at the Dayton Company in Minneapolis signed "William Naneville" in payment for merchandise purchased there and at that time had submitted identification similar to that submitted to Sears. A Dayton Company employee testified that defendant was the person cashing the check. An employee of Donaldson's in Minneapolis testified that defendant was the person who had cashed a check signed "William Naneville" in payment of merchandise purchased there a short time before. Evidence was also submitted as to defendant's conviction of similar crimes in Minnesota and Illinois.

William G. Naneville testified that on March 28, 1959, he had lost his billfold containing his Minnesota driver's license; a card from the Anaconda Copper Mining Company; and other personal property, together with $175 in cash. He testified further that he had no bank

account at Northwestern National Bank in Minneapolis; that he was not acquainted with defendant and had not authorized defendant to sign his name to any checks; and that he had not signed any of the checks which defendant had attempted to cash. A handwriting expert submitted by the state testified that, from his comparative analysis of the writing appearing on the Sears check, the Dayton check, and the Donaldson check, it was his opinion that the writer of the Sears check also wrote the Dayton check and the Donaldson check; and that they were not in the handwriting of William Naneville, whose signature he had examined. As indicated above, other witnesses had testified that at the time of his arrest defendant had admitted that the check presented to Sears had been signed by him.

In his testimony defendant denied that he had signed any of the forged checks or that he had admitted that he had signed them. He testified that his reason for being in line at Sears was for the purpose of making inquiry about purchasing certain articles on a "lay-by plan" and that he had not tendered the check described nor any of the identification documents submitted in evidence.

On April 10, 1959, while defendant was in custody, a complaint was filed in the municipal court of Minneapolis charging him with the crime of attempted forgery in the second degree. On April 11, 1959, he appeared in that court and entered a plea of not guilty. He advised the court that he was not able to retain counsel and the court thereupon assigned counsel to defend him. At the request of the latter, the case was continued to permit time for investigation and for defendant to decide whether a preliminary hearing should be demanded. The preliminary hearing was held April 21, 1959, after which defendant was bound over to the District Court of Hennepin County for trial. After several continuances ordered upon motion of defendant, his trial in district court commenced on May 12, 1959. On May 14, 1959, the jury returned its verdict of guilty and on June 1, 1959, defendant was sentenced to an indeterminate term in the state prison for the crime described and for one prior conviction.

At the preliminary hearing and throughout his trial defendant was represented by counsel appointed by the court. On appeal defendant contends that (1) the evidence was insufficient to sustain the verdict;

(2) substantial rights were denied to him in that (a) his counsel was incompetent; (b) his detention in custody from April 6, 1959, until the preliminary hearing was in violation of Minn. St. 633.05; (c) since the crime of attempt to commit forgery in the second degree would require proof of his mental processes known only to himself, his conviction therefor was invalid; and (d) certain evidence taken from his person at the time of his arrest without a search warrant was wrongfully received in evidence.

■ The evidence relative to defendant's actions and identity clearly manifest that his guilt was established beyond a reasonable doubt. He was identified by one of the sales clerks, the cashier, and the security officer at Sears as the person who there presented the forged check signed "William Naneville" on April 6, 1959. Other witnesses identified him as the person who had cashed forged checks similarly signed in the same locality shortly prior thereto. Upon cross-examination he admitted his conviction for similar crimes in Minnesota and Illinois a few years prior to the present offense. Reception of such evidence was within the discretion of the trial court on the issue of identity and as relating to the credibility of defendant. State v. Bock, 229 Minn. 449, 39 N. W. (2d) 887; State v. Lucken, 129 Minn. 402, 152 N. W. 769; State v. Barrett, 40 Minn. 65, 41 N. W. 459; State v. Sweeney, 180 Minn. 450, 231 N. W. 225, 73 A. L. R. 380.

In his testimony defendant admitted he had been present at Sears at the time in question but denied that he had either signed or presented the check described. Likewise, he denied that he had cashed forged checks at Dayton's or Donaldson's. Obviously, such a conflict in evidence created a jury issue. The jury had ample opportunity to observe all the witnesses and to determine their credibility. It believed the state's witnesses and their testimony established defendant's guilt beyond a reasonable doubt. There being substantial evidence to sustain the verdict, we cannot disturb it here.

■ Defendant asserts that the incompetence of his counsel was such that for all practical purposes he was denied his right to counsel so that in substance the court lacked jurisdiction in the proceedings. In particular he asserts that his counsel who had been appointed by the court prior to trial had advised him to plead guilty; and that counsel's

hearing was such as to render his services worthless. We have carefully examined the record with respect to this charge and from such examination are convinced that defendant's counsel conducted a vigorous and aggressive defense on his behalf; and that, considering the evidence with which he had to contend, he did as well as could be expected. Not until subsequent to trial and sentence did defendant complain as to his counsel's qualifications. The fact that the latter advised defendant to plead guilty in the hope of a lighter sentence would not indicate incompetence. On the contrary, it often may be regarded as sound advice. See, United States v. Gutterman (2 Cir.) 147 F. (2d) 540, 157 A. L. R. 1221. The general rule applicable in situations such as this is that, if the accused has had fair representation by competent assigned counsel who proceeds according to his best judgment and the usually accepted canons of criminal trial practice, no right of the accused is violated. Annotation, 157 A. L. R. 1226; United States v. Gutterman, *supra*; United States v. Mitchell (2 Cir.) 137 F. (2d) 1006; Id. (2 Cir.) 138 F. (2d) 831; Burgunder v. State, 55 Ariz. 411, 103 P. (2d) 256; People v. Pearson, 41 Cal. App. (2d) 614, 107 P. (2d) 463, certiorari denied, 313 U. S. 587, 61 S. Ct. 1119, 85 L. ed. 1542; People v. Dale, 355 Ill. 330, 189 N. E. 269; People v. Kotek, 306 Mich. 408, 11 N. W. (2d) 7, certiorari denied, 323 U. S. 790, 65 S. Ct. 312, 89 L. ed. 630; Carr v. State, 21 Ohio Cir. Ct. 43, exceptions overruled without opinion, 65 Ohio St. 612, 63 N. E. 1133.

■ Defendant asserts that his arrest and detention after April 6, 1959, was in violation of Minn. St. 633.05, which provides: "On the return of the warrant with the accused, the justice shall proceed to hear, try, and determine the action within one day, unless continued for cause." Obviously, this section has no reference to a trial on a felony charge such as was involved here since a municipal court would have no jurisdiction to try the same. Defendant was arrested April 6, 1959, and brought in for hearing on April 11, 1959. Any continuances thereafter with respect to the hearing or with reference to trial were granted at defendant's request. With respect to the initial arrest and detention until April 11, 1959, no satisfactory explanation thereof appears in the record and there would seem to be no justification for such a delay.

Nevertheless, this in itself would not deprive the district court of jurisdiction over defendant's person or of his trial for the crime described. Insofar as the record discloses, at no time prior to conviction did defendant object to the delay. This court has never held that such a delay would deprive the court of jurisdiction. See, State v. Schabert, 218 Minn. 1, 15 N. W. (2d) 585. Further, it has been held on a number of occasions that violations of the rights of an accused with reference to his arrest, which presumably would include his detention thereafter, and with reference to his being brought before the court, are waived when the accused pleads to the charge or indictment and proceeds to trial without objection. State v. Fitzgerald, 51 Minn. 534, 53 N. W. 799; State v. Warner, 165 Minn. 79, 205 N. W. 692; State ex rel. Schwanke v. Utecht, 233 Minn. 434, 47 N. W. (2d) 99; State ex rel. Adams v. Rigg, 252 Minn. 283, 89 N. W. (2d) 898, certiorari denied, 358 U. S. 899, 79 S. Ct. 224, 3 L. ed. (2d) 149. Here defendant made no objection to the delay and through his counsel entered a plea of not guilty and proceeded to trial. Under such circumstances, he cannot now challenge the court's jurisdiction.

■ Defendant contends that the charge—*attempt to commit forgery in the second degree*[1]—involves a mental process, and since no evidence was submitted which could establish something known only to himself his conviction therefor was unlawful. It has frequently been held that a jury's finding of guilty intent involving the mental processes of an accused may be based upon inferences to be drawn from the facts and surrounding circumstances. In particular, this court has held that an inference of an intent to defraud may be drawn from defendant's actions in wrongfully signing another's name to a check without authority therefor. Thus in State v. Higgin, 257 Minn. 46, 50, 99 N. W. (2d) 902, 905, we stated:

"* * * a showing that the defendant wrongfully signed another's

---

[1] Minn. St. 610.27 provides: "An act done with intent to commit a crime and tending, but failing, to accomplish it, is an attempt to commit that crime; and every person who attempts to commit a crime, unless otherwise prescribed by statute, shall be punished as follows: * * *."

name to a check without authority *establishes a sufficient basis for an inference that the defendant intended to defraud someone.* * * *

* * * * *

"* * * intent to defraud may be, and normally is, inferred from the established circumstances." (Italics supplied.)

1 Wharton, Criminal Evidence (12 ed.) § 131; 3 Underhill, Criminal Evidence (5 ed.) § 773; cf. State v. Bjornaas, 88 Minn. 301, 92 N. W. 980. Here the inferences to be drawn from the evidence submitted would fairly establish that defendant had attempted to commit the crime of forgery so as to come within the provisions of § 610.27. See, also, 5 Dunnell, Dig. (3 ed.) § 2409, and cases cited.

■ We find no error in the court's reception of certain evidence taken from the person of defendant without a search warrant at the time of his arrest. Most of the evidence submitted was voluntarily surrendered by defendant when he was being interrogated by the security officer at Sears. However, at that time certain printed checks of Northwestern National Bank of Minneapolis, on which the name "Robert Flenoid, Jr." had been printed, were taken from him. These were also received in evidence and it is defendant's contention that this was improper. We do not agree. It is fairly well established that even though a person be arrested without warrant, evidence found in his possession or control, at the time of arrest, and taken from him or his possession without a search warrant is admissible if it is indicative of his guilt of the crime for which he had been placed under arrest. City of St. Paul v. Stovall, 225 Minn. 309, 30 N. W. (2d) 638; State v. Siporen, 215 Minn. 438, 10 N. W. (2d) 353; State v. Sauer, 217 Minn. 591, 15 N. W. (2d) 17; City of Duluth v. Cerveny, 218 Minn. 511, 16 N. W. (2d) 779; State v. Roff, 250 Iowa 174, 93 N. W. (2d) 107; United States v. Rabinowitz, 339 U. S. 56, 70 S. Ct. 430, 94 L. ed. 653; 6 C. J. S., Arrests, § 18; 4 Am. Jur., Arrest, § 68; Annotation, 82 A. L. R. 782, 784.

Here defendant offered no explanation of the printed checks belonging to Robert Flenoid, Jr., and certainly they would have some bearing on whether he was engaged in the process of offering forged checks with the intent to defraud. As such they would be admissible in evidence under the authorities cited.

The judgment of conviction is affirmed.

Affirmed.

MR. JUSTICE OTIS, not having been a member of the court at the time of the submission, took no part in the consideration or decision of this case.